Mr. Kovarchik. May it please the Court. Had I been able to offer in Samsung here nine years ago the kind of evidentiary record that Volkswagen can offer today, I think Samsung would have gone the other way. I think an allowance would have been awarded there. I am sorry? Would there have been jurisdiction to deal with defects that can't be fully documented until years afterwards? Oh, I think absolutely, because in Samsung there was a basis for filing the protests for either an allowance for defects under section 158.12. But how could you set forth distinctly and specifically with respect to each category a requirement of section 15.14 that at the time of import the defects, they don't arise sometimes according to the historical warranty costs? Is that setting forth distinctly and specifically? Estimating being specific? I think it is. If customs says in their rulings that an estimate is good, then it is definitely setting forth your claim. I'm confused. Put aside the estimate for a moment. You have all this extensive documentation, which is what you're relying on. That's right. This documentation existed in many instances, at least, before the filing of the protest. Am I understanding correctly? That's correct. Some did. What strikes me from looking at the documentation is that some of it supports the idea that there was a defect at the time of importation and some of it doesn't. You have these hundreds of entries. Don't you have the burden of doing a better job of separating out the wheat from the chaff than you did? I don't think there's any wheat in there that's claimed. For instance, the system that Volkswagen set up using terms of art for defects specifically states forth, sets forth, as this Court said in Sov, the defective part, and it's applied what was inside, what the defect was. Let's take an example here. This is a door hinge, incorrectly adjusted and repaired. That's right. We can't tell whether that was incorrectly adjusted when it was manufactured or maybe it had been serviced improperly by the dealer or had been an adjustment while the thing was being shipped to the dealer. We just can't tell. The problem is that some of them, it's entirely possible that the defect was created after the entry. But not likely, and Volkswagen Germany paid for that. Do you have any testimony that it wasn't likely? Do you have any expert testimony? On each particular one? No, on the category, on whether it was likely or not likely that this was a defect that was created in the instance, incorrectly adjusted. The answer is there's no expert testimony, right? That's correct. But even at that, how could we know whether the damage occurred after through some kind of malusage or even just normal usage as opposed to being present at the time of import? As I said before. You have to rely on your estimates again, right? Well, no. A defect is defined by the contract. The contract specifies that the automobiles have to perform properly during the warranty period. If they don't, that's a defect. You're saying a warranty has to define what a defect is? No. Instead of a warranty defining perhaps a period in which they will repair malusage? No. The contract, like the contract in Fable, which this court found, defined defects, sets forth a performance standard. That is, adherence to the warranty during the warranty period. In Fable, it was the machine, the imported jackets had to be machine washable. That's not a universal performance standard. Doesn't the warranty to the customer cover situations in which there has been some damage to a part before the customer gets the automobile? There's been some damage before it. Well, that there was a manufacturing defect. Yes, that's exactly what it covers. No, no, but it doesn't have to be a manufacturing defect. Under the warranty provisions, the customer could say, well, I don't care whether this paint was scratched during the manufacturing process or whether it was scratched when the thing was at the dealer. You repair it, and in fact, it gets repaired and the warranty costs- That's true, but we've segregated those in our evidence. We have specific categories of warranty repairs. The one you're just talking about, a scratch, that's covered by the category known as transportation claim. Damage by mishandling of Volkswagen or the dealer. It's excluded from here. But doesn't our precedent clearly require more than warranty to define a latent defect? No. In fact, in the Samsung case, it was the contract exactly which was the basis for that. The court found in Samsung that a latent manufacturing defect is damaged for purposes of 158.12 and entitled to an allowance. That's why this court remanded for determination of the allowance in Samsung, in exactly these claims. Can you show me in either Samsung or Saab, the two cases most relevant here, that a warranty is sufficient to define a latent defect? You don't have to come up with evidence that it was actually damaged at the time of import. I think the answer is in Fable. I think Fable made it specification was machine washability. They weren't machine washable and the only way you can tell that is if you wash them. Well, perhaps then we're dealing with a different type of product because we all know in an automobile that sometimes products, even though imported completely intact, they can wear out before the warranty period expires. That's right. Normal wear and tear is excluded from warranty coverage. Those types of claims are not before us. Our system is very specific. The problem is that the warranty claims do cover problems that arose during the manufacturing process, as you say, but they also cover problems that arose after the entry of the merchandise and before it was given to the customer. Those are the ones that are excluded from the claim by our warranty claim classification system. I just mentioned transportation claims earlier. In Saab, there was- Well, but that's the problem. The question is whether your system here and the identification of these defects is sufficiently reliable to establish that these were manufacturing defects rather than post-entry defects, if we can call it that. These are all definitions that you are creating, that Volkswagen creates in Germany. That's right. These are not definitions which we have accepted here in the United States courts as being latent defects. That may be. We haven't accepted your Volkswagen German definition of what a latent defect is. That may be. We've required documentation, which this doesn't unless you see something I don't. Well, that may be, but again, a defect is defined by contract, and I think that's a basic principle that the entire Simpson opinion is based on. That's why we look to the contract in the first place. But then I don't see that the contract- I mean, under your view, you wouldn't need any proof beyond the contract, and I think we've rejected that as Judge Rader said. What you have to rely on is that these warranty cost reports are sufficiently defined and allow us and allow the court to distinguish between manufacturing defects and post-entry defects. Well, as I was going to say before, the other problem that Saab had is there seems that there could be dealer-added options that were included in the warranty claims, and certainly dealer-included options are included, but we excluded those. But I don't think that's sufficient because some of these descriptions in here are sufficiently broad that they would cover post-entry problems as well as manufacturing defects. Maybe some of the others are sufficiently clear, but it seems like a mixed bag for you. Well, the automobiles were manufactured overseas. They weren't completed here. The only servicing that was done here is what's shown in these reports, so I really don't see how that could be the case. I think, at least by a preponderance, that's eliminated. I guess you could speculate it. Oh yes, maybe the customer tried to break the door off the car. That's certainly possible, but isn't it more likely than not that when the dealer looked at it and it said it's incorrectly adjusted, and we know the only adjusted... We should have an expert testimony that says that. You know, there's nobody who testified as to the warranty process, and that I've reviewed these things, or I reviewed a sample, and I, you know, my conclusion is that based on my knowledge of how the process works, that these descriptions are of manufacturing defects. All you did was dump these thousands of pages on the court and expect it to make these determinations. I mean, it strikes me that you could have done more. Whether you have to do more or not is a question, but you could have done more. Okay, well, let me answer that in two ways. First of all, Saab did offer an expert that attempted to do exactly what you say, and Judge Goldberg rejected that as totally irrelevant, because he didn't have any personal knowledge. But you didn't offer an expert here. No. On the other hand, I mean, there are something like 200,000 repairs here. I suppose we could get an expert to come in to testify, or we could try to find... Isn't that... Samsung makes it quite clear, reading from it, that what we're looking for is when the merchandise received is worth less than the merchandise that was ordered. That's right. So at the time of import, we've got to know... We've got to... It's got to have a latent defect, and we've got to somehow be able to tie that defect to the time of import. That's right. So we look... Not to anything that would happen later in any way. Well, but a latent defect, I mean, that is... That's something that has a well-known definition. It's not discernible. That's why we call it a latent defect. Exactly. It's a flaw. So the only way to tell if there was a latent defect is during the warrant period, if that defect became visible and was repaired. Well, that's fair enough, but the question is, have you shown that these things are manufacturing defects? I think the answer is absolutely. I think the evidence, quite frankly, is overwhelming. And I think that, you know, the whole basis of this is transaction value. That's the law we're looking at. It's supposed to be the transaction value. We're respecting the transaction value of the repair. I think that's inconsistent, and I think Volkswagen and Samsung's second claim, that is the exclusion from maintenance, doesn't require any defects to be present in importation, or any repairs for that matter. Only post-importation services. Now, under that statement, I think that's something transaction value is based on. It's... Look at the transaction. There's a purchase of automobiles. There's a purchase of service. The purchase of service is not dutiable, whether there are defects existing in importation or not. The court was not able to get to that in Samsung, but I think that's a very basic principle of customs law that ought not to be overlooked. I don't think Congress really intended me to spend four or five hundred hours of Judge Goldberg's time with witnesses trying to prove whether this particular... Four or five hundred hours? Well, there's, I think, something like 30,000 pages of defects. Yeah, but you could have had an expert witness do sampling. You could have categorized them. Do you even prove the dates of entry of everything on that spreadsheet? The government faults that as one of the points. No, Your Honor, that's really completely disingenuous. It's on the entries themselves that are a record in the Court of International Trade, and I provide a one-page list to the Court. There are only 18 entries involved. The entry dates are on there. That's a complete red herring. So I think what Congress intended... I don't think Congress intended me to take up Judge Goldberg's time or your time on proving defects in importation when there are post-importation services that the exporter paid for. I think those are excludable. They only have to be separately identified, and I think 158.12 should be interpreted also in that light. Clearly, if we're only looking at the statute, that is the exclusion for maintenance or assembly or erection, all you have to do is tell customs what you agree with the exporter. By the way, you didn't raise the maintenance issue down below, right? I'm sorry? You didn't raise the maintenance issue. I did. Where? It was in the It wasn't in the complaint in the Court of International Trade. It wasn't, but that's my error. It was in Samsung, and it was meant to be in this one too. And, you know, I think you have to appreciate the procedural posture that we've been in here in Samsung, which I worked on, in Faber, which I worked on, and here in Volkswagen as well. This Court ruled only on the 158.12 claim in Samsung, although we briefed the other one and argued it there. Mr. Kovarcik, we need to move on to the government's case. We'll give you back a minute of rebuttal, and if you'd give Ms. Williams an extra minute if she needs to use it. Thank you, Your Honor. May it please the Court. This case boils down... Let me tell you the problem that I basically continues to say that almost any latent defect proof isn't going to be sufficient. Let's take the example here of safety recalls by the Department of Transportation, right? And they've listed those separately, right? So you seem to be arguing that a safety recall, a DOT-mandated recall, doesn't count because design defects somehow aren't under the statute. Am I understanding you correctly? That is absolutely correct. That's the problem with... Well, how can that possibly be true, that the design defects aren't... the latent design defects aren't within the statute? Because the regulation, 158, covers damage existing at importation. Damage is defined as something less than you ordered. That's why mixing up the concept of defect with damage is what the major problem with the Volkswagen's case is. Only damage, that which is less than ordered, is recoverable. Your theory is that they ordered defectively designed merchandise? Here's an example. Is that the theory? No, no, no. That they ordered that, and there's no evidence on this on the record, and that's part of what leads to the wrap. It's the only one I can think of right now. That car may... let's say the designer forgot to put in seat belts. Just forgot. Let's presume that. That's the car that Volkswagen USA ordered. They didn't order a car that complied with U.S. safety standards? Where is the evidence that says this? That's the problem. We have to... that's the problem. There's a complete lack of evidence. But let's... I'm just using the seat belts just because it's an easy example. If a car... if they put in... forgot to put in seat belts, they put a cheap coat of paint on because it made the car cheaper, so U.S. Volkswagen USA didn't have to pay so much money because they put a cheaper coat of paint on. If in hindsight you realize it appears that's a mistake... Well, suppose the design defect is latent, and it's unlike the seat belts. You can't tell from looking at the car. It's... And suppose they've completely documented it. They said, here's this design defect. We had to make these repairs. The DOT required us to make the repairs. It was a latent design defect. Your theory is they can't recover. Oh no, I'm sorry. No, our theory is if there is in the contracts, you can prove it's what they ordered. Then certainly you can recover. I don't understand. This is... this what they ordered argument has been rejected. You know, people don't order things with latent defects. Exactly. That's the point here is the... in... there's no evidence in this case as to what Volkswagen ordered. You're right. If we have... we can presume that they ordered cars that met safety standards. We don't know that. There's no evidence in this case. That's the fundamental problem here is certainly if Volkswagen could come in here and say, here's the proof, whether through our documents or through expert witnesses, which I'll get to. They voluntarily chose not to have. We ordered these cars. We ordered them to be up to every single safety standard that the paint's going to last five years. And that was an order. Certainly they can then say that's damage that existed at importation. Let me... let me ask you. Suppose we reject your argument that design defects don't count. Okay. Is it then the case that they have adequately documented the items which... where there were repairs to satisfy recall notices? No, because you don't know why the product was recalled. And we don't know... there is not enough evidence to make that determination. What's the problem? You don't know if it was recalled because in hindsight they realized there should have been another part that we didn't know about at the time that... or like a Pinto. You know, the gas tank was designed too close. It might be that or it might be in hindsight you need an extra strap somewhere. We know there's not enough evidence. Yeah, but suppose we say that latent design defects do reduce the value and that they contract. But let's assume we reject your contract argument. As a matter of fact, have they not adequately documented the repairs that were made to satisfy these recall requirements? They haven't documented the repairs. They haven't documented... Because they've told you and that's the problem with most of their evidence. Number one, it's a big mess. It's hundreds of thousands of pages, which the judge has to go through things that are completely irrelevant. It's not deciphered. Putting those two things aside, the evidence will say, as you mentioned earlier, incorrectly adjusted. We don't know. No, no, no. I'm not talking about that. I'm limiting this discussion for the moment to the design defect that the DOT required that they repair. And those are noted on here. You can tell, right, from these pages which are the design, which are the repairs ordered as a result of recalls, right? You can determine them as a from recalls, but recalls are not necessary. That's maybe the misunderstanding here. There's no evidence that all recalls are only those that DOT said the Volkswagen itself can decide to recall something. There's a failure of proof on this, but... You mean that some of the problem is that some of the recalls might have been manufacturer-initiated? Yes, and that, yes. How do I know that? Because there's a, it's in the, excuse me one second. If you look at page 104 of the, 104 of the administrative record, recall actions shall be performed upon mutual agreement between the manufacturer and the company. That's the evidence. This doesn't tell you. That describes what are recall actions. It doesn't tell you. They only reflect DOT problems. Tells you. So that's the problem. It's a failure of proof. I thought there was something in there where there was a definition of recall being DOT or California emissions or something like that. I don't think so. The U.S. government code. So we, you can identify which of these were recalled and repaired as a result of a U.S. government recall notice, right? Okay, but that doesn't tell you. I guess the problem is there's no evidence establishing that those are only things that they, at the time they contracted, they contracted to have it meet that standard. I'm saying, let's put aside your contract argument. If you're going to, let's do it. Wait, wait. Assume we rule against you. Just hypothetically, we rule against you on your contract argument. What's wrong with the documentation? They seem to identify which ones were recalled and repaired pursuant to U.S. government recall notices. What's wrong with that documentation? I guess if you assume that by definition, every time something is recalled, it's recalled by the U.S. because of a U.S. notice, and you assume that there is a contract that's, or it's valid. Wouldn't that be a matter of record? We can check. You can check the reason the government made each of these recalls, right? There's no evidence in the record on this. I'm just saying, but if you assume that, as you say, that yes, it reflects damage existing in importation, if something is subject to a recall notice, and it's subject to a recall notice, yes, you're correct. But there's two very dangerous assumptions. Yes, I would agree. Okay. What about the jurisdiction point? I think the jurisdiction point is clear. Simply because a car has a certain claim made before the protest, you're aware of the damage at the time you protest, and then later, you find that it has 10 more problems. This court and the trial court did not have jurisdiction over those 10 more problems, because you need to know your claim at the time you file your protest, and you have to specify it in your papers. Suppose we agree with you on that. How much of this case does that affect? A significant proportion. But not all? No, it does not all. But it does affect a significant portion. And that's really part of the trouble the trial court had, is the plaintiff submitted volumes of evidence which is mixed with irrelevant stuff, stuff under which there's no jurisdiction, stuff in which the plaintiff admits that it's not subject to this case. They're the ones that have, I think the abbreviation is AW, because they're saying, we agree that that's not recoverable. The information was not accessible to the trial court. What if we, just again, hypothetically, what if we sent this back and put the burden on Volkswagen to sort all this information by mileage, by date of protest, by government-coded... That was exactly my next point. There seems to be a misunderstanding here. This was a trial. The plaintiff had an op... Both sides moved for summary judgment. The trial court said, on the evidence you gave me, I can't tell. And as now, then, plaintiff produces evidence, we did not dispute it. Because this really is a case where the plaintiff has to prove their case. The trial court said, let's go to trial. The plaintiff voluntarily chose to submit this on trial exhibit A. They voluntarily chose to have no expert witnesses. So they chose to rely on their warranty as a definition of defect. Exactly. And on their trial exhibit, the thousands of pages of lines of claims. So what about the next case? The next case, when they do submit that specified, sorted out record, will it be different? Your Honor, honestly, it might. Because it is possible that if you were able to triage the information and they explain some of their repairs, some of these certainly do reflect damage existing on importation. If you have a repair at 5,000 miles to an engine, that probably would be something they'd be able to recover on. The problem is here, there are too many roadblocks for the court to be able to ascertain whether there's any valid claims here. But the trouble I have is that the ground for decision here by the trial court seems to be not that the records were too difficult to decipher. I see that in your brief, but I don't see that in the Court of International Trade's opinion. What I see is a suggestion that there's some corroboration requirement, that these kinds of records in and of themselves are never sufficient. That seems to me to be a troubling ground for the decision. I don't think the Court intended to say that. During the meetings with the judge and the briefing, we certainly briefed that it's not accessible information. The court was focused on, as with Saab, is the deciphered damage code sufficient to tell me that in light of the warranty, looking at those two things together, is this damage existing on importation? And as with Saab, the court said, no, it's not sufficient. But it seems as though the court, in dealing with these recall notices, accepted your argument that design defects don't count, right? I think the court found the same problem I did. The plaintiff didn't establish the limitations you placed on it. And had the plaintiff done a better job with their evidence? No, but he brought your contract argument that design defects don't count, right? I'm sorry? He brought your argument that design defects don't count. He… Does Samsung and Saab have an independently verifiable requirement? Absolutely. Is that tantamount to a corroboration requirement? Or is the district judge really pushing that too far? The district judge is not pushing that too far for a very good reason. Warranties do not only repair damage existing on importation. So since Saab, courts have said, a warranty is a good start. It's a really good start. But you also need some evidence that allows us to make sure you're doing repairs due to damage existing on importation. It's not due to mishandling, misuse. Decision that, in hindsight, you used this car with respect for a crappy version of paint, and it should have been a much higher quality of paint. You got the car you bought. If you bought a car that has a cheaper paint, and in hindsight, Volkswagen realizes they should have used something better, you can't take…that doesn't affect its value on importation. Because that's what we're trying to measure here. And that's the fundamental problem with just looking at a warranty. Well, Saab also said that a short time between import and repair is reliable evidence as well. So if they sorted by mileage somehow, that might help us, right? Yes. And Saab, the court said… That might be the independent, verifiable information. Yes. It might be that if there's such a limited amount of time, and if you're reading the little description they have, it's possible. The problem is the plaintiff had their chance in this case. They chose not to do it. And I want to touch on real quickly Fabile, which the plaintiffs mentioned a couple times. That case is quite interesting. Because the evidence in that case is the importer got a sample of the actual product they were importing. It was washable. The contract specified it was washable. The item, when they finally got them, were not. That is a perfect example of ordering something, knowing what you're getting, when you get it, it doesn't meet those terms. The warranty here doesn't parallel that exactly. And that's the problem with Fabile, why it doesn't relate to this case. In closing, I'd like to touch on very briefly the rehearing argument. That clearly is not appropriate for the trial court… A maintenance issue. Yes, exactly. But they admit they didn't raise it in the complaint. Not in the complaint, not in the summons. And that should end the discussion on that. And I'd just like to close that truly the problem here is at trial the plaintiff didn't prove their case. Thank you. Thank you, Ms. Williams. Mr. Kvarchuk, we wish to hear from you at least for a minute. Well, thank you so much. I disagree that the maintenance argument was not raised below. And I just wanted to put it in context. It was raised here in Samsung. The court remanded and said we're not going to reach that argument. Proceed under 158.12 first. I tried to follow that in Samsung. We tried to follow that in Volkswagen, which was pending at the same time. And the evidence is exactly the same for the maintenance as it is for the 158.12 allowance argument claim. It's already been briefed, was briefed below. And we know Judge Goldberg's opinion. He thinks it doesn't apply and for the wrong reason. Thank you so much. Thank you, Mr. Kvarchuk.